IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

VESPER V. FRANCIS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BRUCE VESPER, APPELLANT,

V.

DAWN FRANCIS, APPELLEE.

Filed February 14, 2017.    No. A-16-442.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

Avis R. Andrews for appellant.

Corey J. Wasserburger, of Johnson, Flodman, Guenzel & Widger, for appellee.

MOORE, Chief Judge, and INBODY and PIRTLE, Judges.

PIRTLE, Judge.

## INTRODUCTION

Bruce Vesper appeals from an order of the district court for Saunders County which denied his application to modify custody of his and Dawn Francis' son, and dismissed his application for citation for contempt against Francis. Based on the reasons that follow, we affirm.

## BACKGROUND

Vesper and Francis are the biological parents of Alexander Francis, born in September 2011. Vesper and Francis were never married. In November 2012, the trial court entered an order determining that Vesper was Alexander's biological father and awarding custody of Alexander to Francis. The court also established a parenting plan which set forth Vesper's parenting time. Vesper was given parenting time every other weekend from Friday at 6 p.m. to Sunday at 5 p.m.,

- 1 -

and every Wednesday from 5 to 8 p.m. The plan also set forth a schedule for holidays and summer break. The parties were ordered to exchange the child at the police station in Fremont, Nebraska.

Vesper appealed the custody determination to this court, which we affirmed. See *Vesper v. Francis*, No. A-12-1168, 2013 WL 5530281 (October 3, 2013) (not designated for permanent publication).

In July 2015, Vesper filed an application for modification alleging that material changes in circumstances had occurred such that it was in Alexander's best interests that his care, custody and control be placed with Vesper. The alleged material changes in circumstances included: (a) Francis' continued interference with his parenting time as ordered by the court; (b) Francis' failure to seek reasonable and necessary medical care for Alexander; (c) Francis and/or her husband creating a hostile environment during parenting time exchanges; (d) Francis keeping Vesper from attending Alexander's speech pathology sessions; and (e) Francis failing to keep Vesper apprised of medical and/or mental health appointments and failing to share records with him.

Francis filed an answer, which denied the allegations in the application for modification, and a counter complaint, which alleged that the following material changes in circumstances had occurred: (a) Vesper creating a hostile environment during parenting time exchanges; (b) Vesper unreasonably refusing to allow Francis' family to assist in transportation for parenting time; and (c) the summer parenting time arrangement was not in Alexander's best interests. Francis asked the court to modify the transportation and summer provisions of the parenting plan in the best interests of Alexander.

On the same day Vesper filed his application for modification, he also filed an application for citation for contempt against Francis. The application alleged that Francis had failed to give Vesper his court-ordered parenting time on specific dates; had refused to keep him advised of all medical contacts and social progress; and refused to provide him with medical and educational records or access to such records. Vesper sought sanctions for contempt, attorney fees, and other relief as may be just and equitable. Francis entered a denial.

Trial was held in March 2016. Vesper's application for modification and application for citation for contempt, as well as Francis' counter complaint, were heard at the same time.

At trial, Vesper presented evidence to show that he had been denied parenting time on numerous occasions since the initial custody determination in November 2012. In his application for citation for contempt he alleged 15 specific parenting times that he was either denied, or his time was shortened. Vesper admitted at trial that he had received parenting time on two of the time periods he had set forth in his application. Vesper also testified that several of the alleged missed parenting times only started later than the scheduled time. Two of those times occurred on the Wednesday before Thanksgiving and Francis testified that the parties disagreed on the hours of Vesper's parenting time due to the holiday. Francis also testified that a couple Wednesday visits were denied because Vesper had not returned Alexander at the end of his weekend parenting time in accordance with the parenting plan.

Francis testified that some of the dates Vesper claimed he was denied were during times that she was exercising her two uninterrupted weeks of time with Alexander in the summer pursuant to the parenting plan. Vesper testified that Francis failed to give him advance notice of the dates she intended to exercise her summer parenting time. Two certified letters sent by Francis

to Vesper were entered into evidence which set out the dates of Francis' two weeks of uninterrupted time with Alexander for summer 2013 and 2014. Both letters were returned to Francis as unclaimed after being held by the post office for about three weeks. Vesper admitted to getting notices from the post office that he had certified letters that needed to be picked up, but he testified he was unable to pick up the letters because his work hours prevented him from getting to the post office when it was open. Two other certified letters from Francis to Vesper were entered into evidence which contained general information about Alexander. These letters were returned to Francis because they were "refused" within days of being sent.

The last parenting time Vesper claims he did not get was January 7, 2015, 6 months before he filed his application to modify and his application for citation for contempt. Francis admitted that she refused to bring Alexander to the exchange location on that date because of the severely cold weather. Francis offered to let Vesper make up the missed parenting time, but he did not accept.

Vesper also testified that Francis has prevented him from participating in school activities and has failed to keep him advised of Alexander's educational matters. Vesper testified that he missed a school open house, an event that parents attend with their children, and Francis did not let him know at what time or if she was taking Alexander. He also testified that he did not know about a classroom Valentine's Day party.

Vesper testified that he has attended four individualized education plan (IEP) sessions for Alexander, which are held every three or six months. He also testified that he receives regular weekly e-mails from Alexander's teacher and speech therapist. Vesper also testified that he goes to Alexander's school every couple months to have lunch with him or to attend his speech therapy session. He also testified that he received notice of parent/teacher conferences in February 2016 from Alexander's teacher.

Francis denied preventing Vesper from receiving information from the school or from participating in school events. Francis testified that Alexander has a binder that he brings back and forth between school and home and that she sends the binder with Alexander when he has parenting time with Vesper so he can see any school information that has been sent home. She admitted that there are times when she forgets to send the binder.

Vesper also alleged that Francis fails to keep him informed of and allow him to participate in Alexander's medical and dental appointments. He testified that Francis had changed dental offices without notifying him and cancelled dental appointments on two occasions without notifying him. He also testified, however, that he went to the dentist with Alexander a few days before trial and had advance notice from Francis. He also attended another dentist appointment within the year before trial. He also testified that, at Francis' invitation, he had attended appointments for Alexander with an ear, nose, and throat doctor. Vesper testified that he has been able to stay apprised of Alexander's medical care.

Vesper also testified that Alexander has seen two mental health professionals since November 2012 and he did not have any input in regard to the counselor's chosen, and was not aware of the first session with either counselor. He has attended other sessions with each counselor. Francis admitted that she did not have any discussion with Vesper before selecting either of Alexander's mental health counselors and did not advise him of the first session with either one.

Alexander also works with a speech therapist and Vesper claimed that prior to August 2015 Vesper could not attend the therapy sessions because they were being held at Francis' house and she would not allow him to be present.

The evidence showed that the parties do not get along and have difficulty communicating with each other. Their relationship has been historically hostile and unpleasant. They do not communicate face to face or by telephone, only in writing or by email or texting. Vesper testified that when he has parenting time he fills out an information sheet about what happened during the visit and sends it home with Alexander. He testified that Francis does not do the same. The parties do not communicate with each other at the start or end of Vesper's parenting time.

Both parties testified about hostility between them during exchanges when Alexander is present. Vesper testified that Francis and her husband have yelled and cussed at him and threatened him with physical violence. Francis testified that Vesper has called her husband demeaning names and has thrown rocks at her car. She described another time when Vesper walked past her husband and ran into him with his shoulder and called him a "chump." Vesper denied the actions described by Francis.

Francis also testified that she was asking the court to change the meeting place for exchanges from Fremont to Wahoo, Nebraska. At the time of the November 2012 order, Francis was living in Cedar Bluffs and Vesper was living in Fremont. The exchanges were ordered to occur at the police station in Fremont. Subsequent to the filing of Francis' counter complaint for modification, she moved from Cedar Bluffs to Ceresco, Nebraska. Francis continued to work in Cedar Bluffs and Alexander continued to go to school there. Vesper was still living in Fremont. Francis testified that it is a 12 mile drive from Ceresco to Wahoo. Francis did not know the distance from Fremont to Wahoo, but agreed that it was a farther distance than Ceresco to Wahoo.

Following trial, the trial court entered an order finding that Vesper had failed to prove a material change of circumstances to warrant a change in custody, and denied his application to modify custody. The court also dismissed Vesper's application for citation for contempt, finding that he failed to prove the allegations by clear and convincing evidence. Finally, the court modified the parenting plan to provide that Francis was to bring Alexander to the police station in Fremont at the beginning of each parenting time, and Vesper was to bring Alexander to the sheriff's department in Wahoo, Nebraska, at the conclusion of each parenting time. Each party was ordered to pay his or her own attorney fees and costs.

Vesper filed a motion for new trial, which was overruled.

ASSIGNMENTS OF ERROR

Vesper assigns ten assignments of error which we consolidate into four. He assigns that the trial court erred in (1) failing to find Francis was in contempt of court for failing to abide by the terms of the parenting plan, (2) failing to modify custody of Alexander and award Vesper legal and physical custody, (3) modifying the parenting plan to impose greater responsibility upon him for transporting Alexander for parenting time, and (4) failing to award him attorney fees relating to his application for modification and as a sanction for Francis' contempt of court.

STANDARD OF REVIEW

In a civil contempt proceeding where a party seeks remedial relief for an alleged violation of a court order, an appellate court employs a three-part standard of review in which the trial court's (1) resolution of issues of law is reviewed de novo, (2) factual findings are reviewed for clear error, and (3) determinations of whether a party is in contempt and of the sanction to be imposed is reviewed for abuse of discretion. *Sickler v. Sickler*, 293 Neb. 521, 878 N.W.2d 549 (2016).

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Kenner v. Battershaw*, 24 Neb. App. 58, 879 N.W.2d 409 (2016). An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

Where credible evidence is in conflict on a material issue of fact, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Pohlmann v. Pohlmann*, 20 Neb. App. 290, 824 N.W.2d 63 (2012).

ANALYSIS

*Contempt.*

Vesper first assigns that the trial court erred in failing to find Francis was in contempt of court for failing to abide by the terms of the parenting plan. He argues that Francis has willfully and intentionally interfered with his parenting time and with his participation in Alexander's physical and mental health issues and his school activities. The trial court found that Vesper provided "untruthful, incomplete or misleading information [in regard to] his claims of contempt." It concluded therefore, that he did not prove his allegations by clear and convincing evidence.

Civil contempt proceedings are instituted to preserve and enforce the rights of private parties to a suit when a party fails to comply with a court order made for the benefit of the opposing party. *Sickler v. Sickler, supra*. Willful disobedience is an essential element of contempt; "willful" means the violation was committed intentionally, with knowledge that the act violated the court order. *Id.* Outside of statutory procedures imposing a different standard or an evidentiary presumption, the complainant must prove all elements of contempt by clear and convincing evidence. *Id.*

Vesper argues that since the original custody determination in November 2012, Francis has withheld or purposely shortened his parenting time on numerous occasions. However, the evidence at trial showed that Vesper had in fact received parenting time on two of the time periods he had set forth in his application as not receiving. Several of the alleged missed parenting times started later than the scheduled time, but Vesper still had parenting time on those dates. Two of the times Vesper's parenting time started late occurred on the Wednesday before Thanksgiving in 2013 and 2014. The parties disagreed by an hour as to what time Vesper's parenting time started due to the holiday. Vesper's parenting time started late on Christmas day 2013 because Francis kept Alexander for the same amount of time that Vesper returned Alexander late on Christmas day the

year before. Francis also testified that she denied Vesper a couple Wednesday visits because he had not returned Alexander at the end of his weekend parenting time in accordance with the parenting plan.

The evidence also showed that some of the dates Vesper claimed he was denied were during times that Francis was exercising her two weeks of uninterrupted summer parenting time. The evidence showed that Francis sent notice of the dates of her summer parenting time by certified mail. Vesper argues that she purposely chose a method of notification that she knew he would not receive because he was working long hours and unable to get to the post office when it was open. Although the two certified letters setting forth Francis' summer parenting time were returned as unclaimed after several weeks, two other certified letters from Francis to Vesper were returned to Francis within days of being sent as being "refused."

The last parenting time Vesper claims he was denied was January 7, 2015, six months prior to filing his application for citation for contempt, and fifteen months before trial. Francis testified that she refused to bring Alexander to the exchange location on that date because of the severely cold weather. Francis offered to let Vesper make up the missed parenting time, but he did not accept.

Vesper also argues that the trial court should have found Francis in contempt of the November 2012 order because she made medical decisions for Alexander without consulting him, scheduled and changed appointments without notifying him, and failed to notify him of Alexander's educational events.

In regard to medical decisions and appointments, Vesper testified that Francis had changed dental offices without notifying him and cancelled dental appointments on two occasions without notifying him. He also testified, however, that he went to the dentist with Alexander a few days before trial and that Francis had given him advanced notice. He attended another dentist appointment within the year before trial. He also testified that, at Francis' invitation, he had attended appointments for Alexander with an ear, nose, and throat doctor. Further, although Francis did not give him advanced notice of the initial appointments with two mental health therapists, he attended other sessions. Vesper testified that he had been able to stay apprised of Alexander's medical care.

In regard to Alexander's education, the evidence showed that Francis and the school both keep Vesper informed of school events and Alexander's progress. Francis testified that when Alexander has parenting time with Vesper, she sends a binder that contains any school information Alexander has brought home. She denied purposefully trying to prevent Vesper from receiving information from the school. Vesper received calendars from the school indicating school activities. Vesper also testified that he gets weekly emails from Alexander's teacher and speech therapist to keep him informed about Alexander's education and progress. Vesper testified that he has been attending Alexander's speech therapy sessions since August 2015, and has also attended several IEP sessions.

We conclude that Vesper did not prove by clear and convincing evidence that Francis willfully violated the original custody order with respect to Vesper's parenting time, or that she has made major medical decisions without consulting him, failed to notify him of Alexander's

educational events, or prevented him from receiving information from Alexander's school. Accordingly, the trial court did not err in dismissing Vesper's application for citation for contempt.

*Modification of Custody.*

Vesper next assigns that the trial court erred in failing to modify custody of Alexander by awarding him legal and physical custody. Ordinarily, custody of a minor child will not be modified unless there has been a material change in circumstances showing that the custodial parent is unfit or that the best interests of the child require such action. *Kenner v. Battershaw*, 24 Neb. App. 58, 879 N.W.2d 409 (2016). A material change in circumstances means the occurrence of something which, had it been known to the dissolution court at the time of the initial decree, would have persuaded the court to decree differently. *Id.*

Vesper makes the same arguments to support his application for modification that he made in support of his contempt action. He argues that Francis is persistently interfering with his relationship with Alexander by denying him parenting time, making decisions without him, and failing to notify him of medical appointments and educational activities. The evidence set forth in the preceding argument is the same evidence relevant in regard to the modification and will not be repeated in detail here. In general, Vesper had not missed a parenting time since January 2015, 6 months prior to Vesper filing his application to modify and 15 months prior to trial. The parenting times that Vesper missed or had shortened prior to January 2015 were explained by Francis and as the trial court found, there were justifiable reasons for most of the times when Vesper did not get his parenting time. Francis did not persistently interfere with his parenting time, as Vesper contends.

Further, the evidence demonstrated that Vesper has been involved with Alexander's school, speech therapy, mental health counseling sessions, and dentist and doctor visits. As the court found, there were times that Francis did not discuss certain decisions with Vesper, but the evidence did not show that she failed to advise him of any material decision. The court further stated that the evidence showed that Francis only made minor and practical decisions without seeking Vesper's input, and based on the relationship of the parties such action was understandable, noting that Francis had been given the "final say" in such matters. We agree with the trial court that there was insufficient evidence to show a material change in circumstances existed based on Francis' interference with Vesper's parental role.

Vesper also alleged in his application for modification that a material change in circumstances has occurred in that Francis and her husband were creating a hostile environment during parenting time exchanges. Both parties presented evidence of inappropriate behavior by the other at exchanges. The trial court found that the parties' relationship continues to be contentious and unpleasant, as it was at the time of the original custody order. We agree. The parties continue to be hostile toward each other and refuse to effectively communicate with each other for the benefit of their child. This is nothing new and certainly not a material change in circumstances.

Based on the evidence, our standard of review, and deference to the trial court's observation of the witnesses, we conclude that the trial court did not abuse its discretion in finding that Vesper failed to prove that a material change in circumstances to warrant a modification of custody. Vesper's second assignment of error is without merit.

*Transportation for Exchanges.*

Vesper next assigns that the trial court erred in modifying the parenting plan to impose greater responsibility upon him for transporting Alexander for parenting time. Although Vesper makes this assignment of error, he fails to argue it. Accordingly, we will not address it. See *Pierce v. Landmark Management Group, Inc.*, 293 Neb. 890, 880 N.W.2d 885 (2016) (an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

*Attorney Fees.*

Lastly, Vesper argues that the trial court erred in failing to award him attorney fees relating to his application for modification and as a sanction for Francis' contempt of court.

Attorney fees and costs are allowed in paternity and child support cases brought by a child's mother, father, guardian or next friend, the county or other authorized attorney. *Cross v. Perreten*, 257 Neb. 776, 600 N.W.2d 780 (1999). See, also, McDonald v. McDonald, 21 Neb. App. 535, 550, 840 N.W.2d 573, 587 (2013). An award of attorney fees in a paternity action is reviewed de novo on the record to determine whether there has been an abuse of discretion by the trial judge. Absent such an abuse, the award will be affirmed. *Jessen v. Line*, 16 Neb. App. 197, 742 N.W.2d 30 (2007).

Because Vesper failed to prove a material change of circumstances existed to warrant modification of custody and his application for modification was denied, we cannot say that the trial court erred in not awarding him attorney fees.

In regard to the contempt action, costs, including reasonable attorney fees, can be awarded, but an award of attorney fees requires a finding of contempt. See *Smeal Fire Apparatus Co. v. Kreikemeier*, 279 Neb. 661, 702, 782 N.W.2d 848, 878 (2010), disapproved of on other grounds, *Hossaini v. Vaelizadeh*, 283 Neb. 369, 808 N.W.2d 867 (2012). Vesper failed to prove Francis was in contempt of court and therefore, he was not entitled to an award of attorney fees in regard to his application for citation for contempt.

We conclude that the trial court did not err in failing to award Vesper attorney fees in regard to his application for modification or his application for citation for contempt. Vesper's final assignment of error is without merit.

CONCLUSION

We conclude that the trial court did not err in denying Vesper's application for modification of custody or in dismissing his application for citation of contempt against Francis. We further conclude that the court did not err in failing to award Vesper any attorney fees. Accordingly, the order of the trial court is affirmed in its entirety.

AFFIRMED.